**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **STEVEN C. LOPEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:06-116** |
| | § | |
| **COUNTRYWIDE MORTGAGE and** | § | |
| **BARRETT DAFFIN FRAPPIER** | § | |
| **TURNER & ENGEL, LLP,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant Barrett Daffin Frappier Turner & Engel, LLP's

("Barrett Daffin") Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. No. 100)

and Barrett Daffin's Motion for Summary Judgment (Dkt. No. 127.) Plaintiff Steven C. Lopez

("Lopez") has responded to both motions. (Dkt. Nos. 105, 137, 146.)[1] In the interests of

efficiency, the Court will consolidate the record of the two motions and consider the arguments

and evidence submitted in connection with either motion as related to Barrett Daffin's Motion

for Summary Judgment. *See Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999) (affirming

summary judgment where, "in the interest of efficiency, the magistrate judge considered the

evidence developed through discovery and treated the [Rule 12(b)(6)] motion as one of summary

---

1.  Barrett Daffin filed its Motion to Dismiss on March 28, 2008. (Dkt. No. 100.) Lopez filed his Response on April 14. (Dkt. No. 105.) Barrett Daffin filed its Reply on April 16. (Dkt. No. 106.) Then on September 12, nearly five months later, Lopez filed a Supplemental Brief Regarding Barrett Daffin's Motion to Dismiss. (Dkt. No. 137.) On September 18, Barrett Daffin filed a Motion to Strike and Reply to Plaintiff's Supplemental Brief. (Dkt. No. 144.) Barrett Daffin contends that Lopez' brief should be stricken because 1) Lopez did not seek leave of the Court to file a motion after the August 29 deadline set by the Court; 2) a brief filed nearly five months after the submission date is untimely, and 3) many of Lopez' attached exhibits should be stricken because they are inappropriate to the proceeding. The Court acknowledges that Lopez' brief was untimely, but in the interest of justice, it will consider all relevant materials before it. Further, because the Court is treating the arguments in Barrett Daffin's Rule 12(b)(6) Motion to Dismiss and Motion for Summary Judgment collectively as one Motion for Summary Judgment, the Court will also consider Lopez' attached exhibits. Therefore, Barrett Daffin's Motion to Strike Plaintiff's Supplemental Brief is DENIED.

judgment, rather than striking the complaint and requiring the Appellants to refile"). *See also Karagiannopoulos v. Gegenheimer*, 2001 WL 175224 (E.D. La. Feb. 14, 2001) (unreported) (where plaintiffs filed motion for summary judgment and defendants filed motion to dismiss under Rule 12(b)(6), court converted motion to dismiss into motion for summary judgment and consolidated  record of two  motions, considering evidence submitted in connection with either motion in support of both motions).[2]  Having reviewed the motions, responses, record, and the relevant law, the Court is of the opinion that Defendant Barrett Daffin's Motion for Summary Judgment should be GRANTED.

### A.  Factual and Procedural Background

This lawsuit arises out of a settlement agreement executed in November 2003 between Lopez, Lopez' uncle Thomas Lopez, First American Title Insurance Company, and Co-Defendant Countrywide Home Loans, Inc.[3] ("Countrywide") regarding a debt secured by a deed of trust lien against the following property:

---

2.  Lopez contends that Barrett Daffin's 12(b)(6) Motion to Dismiss *must* be converted to a Motion for Summary Judgment because Barrett Daffin "attached further independent exhibits" to its Motion to Dismiss. (Dkt. No. 137.) The Court disagrees. As Barrett Daffin pointed out, "This Court is expressly permitted to look not only at Lopez's Complaint, but any documents attached to it and 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" (Dkt. No. 44 at 4 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).) In its Motion to Dismiss, Barrett Daffin attached two documents Lopez had attached to his Complaint and two other documents Lopez referred to in his Complaint (the forcible entry and detainer petition filed by Mortgage Electronic Registration Systems (MERS) and the Rescission of Trustee's Sale by Affidavit to Purge). Both are central to Lopez' claims. The Court is not required to treat Barrett Daffin's Motion to Dismiss as a Motion for Summary Judgment, but is doing so in the interest of judicial efficiency. Further, in converting the Motion to Dismiss into a Motion for Summary Judgment, the Court must allow Lopez a "full and fair opportunity to defend against summary judgment on [his] claims." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003).  Not only has the court accepted Lopez' 32-page Supplemental Brief, including nearly a dozen exhibits (Dkt. No. 137), Lopez also had the opportunity to respond to Barrett Daffin's actual Motion for Summary Judgment. (Dkt. No. 146.)

3.  Countrywide was incorrectly named in the caption of this lawsuit as "Countrywide Mortgage."

**LOT 17, BLOCK 78, PADRE ISLAND–CORPUS CHRISTI, SECTION NO. 2, NUECES COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 33, PAGES 80–82 OF THE MAP RECORDS OF NUECES COUNTY, TEXAS** (the "Property").

Pursuant to the settlement agreement, Thomas Lopez executed and delivered to Lopez a Special Warranty deed to the Property.  Likewise, Lopez agreed to assume and pay the balance of the mortgage as documented in the Deed of Trust to Countrywide.  The mortgage had an outstanding balance of $332,500.00, which Lopez agreed to pay in periodic payments.  The Deed of Trust was not recorded in the property records until September 2004.

Because of the delay in filing the Deed of Trust in the property records, Lopez was unable to obtain information about the mortgage from Countrywide.  Lopez did not make any payments on the loan; thus, Countrywide began foreclosure proceedings on the Property. On September 9, 2005, Barrett Daffin, acting as Countrywide's foreclosure counsel, sent notice to Lopez that the balance due on the loan had been accelerated and the Property was scheduled for foreclosure and sale. A non-judicial foreclosure sale was held on October 4, 2005 and Countrywide purchased the Property on that date from the trustee.  Thereafter, a Petition for Forcible Detainer was filed against Lopez on November 14, 2005.  Although it is disputed when and if Lopez was evicted from the Property,[4] Lopez maintains he was evicted from the Property in December 2005 and has not resided there since.

---

4. On April 14, 2006, the following representations were made at the pretrial conference before Judge Jack:  Counsel for Countrywide: "there has already been a foreclosure and [Plaintiff has] already been evicted"; Counsel for Lopez: Steve Lopez is still currently on the property and the foreclosure was made against Thomas Lopez.  (Dkt. No. 55, Exh. H.)

Lopez filed the present lawsuit against Countrywide on March 14, 2006 and amended his complaint on October 10, 2006, alleging, among other things, that Countrywide breached the terms of the initial settlement agreement and that Countrywide wrongfully foreclosed his property.

On May 23, 2006, Countrywide directed the substitute trustee, Diane Larew, to execute a "Rescission of Trustee's Sale by Affidavit to Purge" ("Rescission Deed") which purported to rescind the earlier foreclosure sale. The Rescission Deed was prepared by Barrett Daffin and provided that:

> At the time the [trustee] executed the Deed [at foreclosure], one or more conditions precedent required by Tex. R. Civ. P. 54 and Tex. Prop. Code § 51.002 to conduct the putative foreclosure had not been accomplished, and the Deed is void and without force and effect. Further [Countrywide] has not accepted delivery of said Deed; therefore, no conveyance of the Property had been made. Therefore, said property remains the property of Thomas E. Lopez, subject to said lien.

(Dkt. No. 101, Exh. A.)

Countrywide maintains it took this action "for the sole purpose of providing Plaintiff a new loan and in order to facilitate settlement of this matter at mediation, which was unsuccessful." (Dkt. No. 56, Exh. D.) Lopez vehemently contends that he was never involved in any settlement negotiations where he agreed to retake the Property and revive the underlying mortgage obligation. The Rescission Deed was filed in the property records in June 2006. Lopez argues he was not notified about the Rescission Deed until August 29, 2006. In this interim period between the alleged eviction and the filing of the Rescission Deed, the Property remained vacant, and allegedly became contaminated with mold after the electricity service was shut off. Lopez contends Countrywide, through

4

Barrett Daffin, attempted to rescind the foreclosure sale after discovering the mold damage to the Property.

After several telephone conferences and disputes about which party was responsible for maintaining the Property, the Court ordered Lopez and Countrywide to file partial motions for summary judgment regarding the validity of the Rescission Deed. On August 24, 2007, the Court issued an order concluding that the Rescission Deed was legally invalid,[5] and therefore, it had no effect on the foreclosure sale. (Dkt. No. 68.) The Court also noted that while Countrywide maintained it filed the Rescission Deed in order to facilitate settlement and revive the underlying mortgage obligation such that Lopez could regain the Property, there was no evidence in the record that the court instructed Countrywide to take this action or that Lopez agreed, or was even aware, of the rescission putting title back in his name.

On October 15, 2007, Lopez amended his Complaint for a third time to include Barrett Daffin as a Defendant. (Dkt. No. 80.) Lopez alleges that Barrett Daffin is liable for abuse of process and malicious prosecution for preparing, causing the execution of, and/or recording the Rescission Deed because Barrett Daffin knew, or should have known, that the deed contained false statements and was invalid under Texas law, but did so as a part of litigation strategy in this case. Lopez further claims that Barrett Daffin's actions were "wholly outrageous and inappropriate in a civilized society,"and caused him "pain, mental anguish, and suffering resulting from the loss of his home," thus constituting intentional infliction of emotional distress. Barrett Daffin now seeks Summary Judgment on all Lopez' claims.

---

5. Both Lopez and Countrywide also agreed that the Rescission Deed was void and had no legal effect.

### B.  Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir.1999). "For any matter on which the non-movant would bear the burden of proof at trial ..., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir.1998); *Texas v. Thompson*,70 F.3d 390, 392 (5th Cir.1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions,"

such as the bare allegations of a complaint, but must present sufficient evidence, such as

sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as

to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en

banc).

### C.  Discussion

#### 1.  Consideration of Lopez' Failure to Timely Respond to Barrett Daffin's Request for Admission

Before assessing Barrett Daffin's Motion for Summary Judgment on the merits,

the Court must determine the effect of Lopez' failure to respond to Barrett Daffin's

Request for Admission in a timely manner. Barrett Daffin served Lopez with its First

Request for Admission on April 7, 2008, and Lopez' response was due on May 12, 2008.

Lopez did not serve his responses upon Barrett Daffin until June 25, 2008. Barrett Daffin

asserts that all requests for admission should be deemed admitted, which amounts here to

Lopez admitting he has no basis for any claim against Barrett Daffin. (Dkt. No. 125);

FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served,

the party to whom the request is directed serves on the requesting party a written answer

or objection . . . .").

The Court may allow the withdrawal of deemed admissions "if it would promote

the presentation of the merits of the action and if the court is not persuaded that it would

prejudice the requesting party in maintaining or defending the action on the merits." FED.

R. CIV. P. 36(b). As Lopez explained in his Response to Barrett Daffin's Motion for

Summary Judgment (Dkt. No.146), he did not respond to Barrett Daffin's discovery

requests because he believed discovery had not yet begun on April 7, 2008, when he was

served with these requests. (Dkt. No. 146.) A party may not seek discovery from any

source before the parties have conferred as required by Rule 26(f),  FED. R. CIV. P. 26(d)(1), and Lopez claims that Barrett Daffin served him with its Request for Admission before filing an answer and before the parties had held a conference or developed a discovery plan. Barrett Daffin contends that the Court's April 3, 2008, Scheduling Order, which established a discovery deadline and set a trial date, superseded the conference requirement. (Dkt. No. 157.) Because the Court is not persuaded that it would prejudice Barrett Daffin in maintaining or defending the action on the merits, it will allow the withdrawal of these deemed admissions and consider the arguments and evidence offered by both parties.

### 2.   Abuse of Process

In support of his claim for abuse of process, Lopez contends the Rescission Deed, prepared by Barrett Daffin and presented to Diane Larew for execution, "contained facts known to be false by Barrett Daffin" and was known by Barrett Daffin to be "invalid in the State of Texas." Lopez further alleges that Barrett Daffin secured execution of the Rescission Deed by deception, "which affected real property and particularly plaintiff's interest in real property," and made "materially false and misleading statements pertaining to the purchase and sale of the property" in violation of Texas Penal Code Sections 32.42 and 32.46.[6] Lopez claims that Barrett Daffin and Countrywide "joined in a civil conspiracy to effectuate violation of the statutes referenced above and otherwise bring about an abuse of the legal process" and "abused the ordinary litigation process, as well as the foreclosure process, by actively engaging attorneys to manipulate documents

---

6.  Lopez' only enumerated claims for relief against Barrett Daffin in his Complaint were abuse of process, malicious prosecution, and intentional infliction of emotional distress. It is unclear whether Lopez intended to also assert a claim against Barrett Daffin for alleged violations of Texas Penal Code Sections 32.42 and 32.46. To the extent that Lopez referenced the Texas Penal Code in his Complaint, the Court notes that Lopez has no private cause of action under either of these sections. *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.–Tyler 1996) ("[T]he Penal Code does not create private causes of action.").

of title which are maintained in Neuces County recording systems for the purpose of taking a more desirable position in pending Federal Court litigation." (Dkt. No. 80, ¶¶ 99–120).

To successfully bring an abuse of process claim, a party must establish 1) an illegal, improper, or perverted use of process, which is neither warranted nor authorized by the process, 2) an ulterior motive in employing such process, and 3) damages stemming from the unwarranted act. *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex.App.-Dallas 2008). The term "process" is traditionally defined as: "The writ, summons, mandate or other process which is used to inform the defendant of the institution of (judicial) proceedings against him and to compel his appearance . . ." in court. *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex.Civ.App., 1979) (quoting BLACK'S LAW DICTIONARY 1370 (4th ed. 1951)). Narrowly, process refers to the individual writs issued by a court during the course of litigation; more broadly, process encompasses the entire range of procedures incident to litigation. *Id.*

A recent case out of the Texas Court of Appeals, Corpus Christi Division, succinctly provides the legal standards applicable to an abuse of process claim:

> In order to be an abuse, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do collateral things that he could not be compelled to do. The crucial aspect of this tort is the improper use of process after it has been issued. In other words, the original issuance of process is justified, but the process is later used for an unintended purpose. When the process is used for the purpose for which it was intended, even if accomplished through ulterior motive, no abuse of process has occurred. The "gist" of abuse of process as a tort does not involve commencing an action or causing process to issue without justification. Rather, it involves misusing or misapplying process justified in itself for an end other than it was intended to accomplish. The purpose for which the process is used is the only thing of importance.

*Pisharodi v. Watts Law Firm, L.L.P.*, No. 13-07-665-CV, 2008 WL 3522119, at *2 (Tex. App.—Corpus Christi, Aug. 14, 2008, no pet.) (citations omitted).

Lopez alleges that Barrett Daffin is liable for abuse of process for preparing, causing the execution of, and/or recording the Rescission Deed. Lopez contends Barrett Daffin knew, or should have known, that the deed contained false statements and was invalid under Texas law, but did so as a part of a litigation strategy in this case. This allegation fails to meet the required elements for an abuse of process claim.

The Rescission Deed does not fall within the definition of "process" recognized under Texas law. Even assuming, *arguendo*, that the Court was willing to stretch the definition of "process" to include the filing of the Rescission Deed, Barrett Daffin was not a party to the original action between Lopez and Countrywide and did not serve Lopez with this "process." No evidence exists to support the conclusion that this "process" was misused or misapplied for an end other than it was intended. Nor is there evidence that this "process" has compelled Lopez to do collateral things that he could not be compelled to do. Finally, Lopez has offered no evidence that he has suffered injury as the result of the execution and filing of the Rescission Deed. In order to show injury, Lopez must show "wrongful *seizure* of property or an actual interference with the person." *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex.App.-Houston [14 Dist.]1997) (emphasis added). If anything, the Rescission Deed attempted to *give the Property back* to Lopez, not seize it.

Lopez has failed to establish the required elements to support a claim for abuse of process; thus, Barrett Daffin is entitled to Summary Judgment as a matter of law.[7]

_____

7. As noted above, Lopez' claim against Barrett Daffin for abuse of process, as alleged in his Third Amended Complaint, arises from Barrett Daffin's involvement with the preparation, execution, and

### 3.  Malicious Prosecution

Lopez sues Barrett Daffin for malicious prosecution using the same underlying facts as he uses to support his claim for abuse of process, namely, Barrett Daffin's involvement with the preparation, execution, and filing of the Rescission Deed. (Dkt. No. 80, ¶¶ 99–120.) To prevail on a claim for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex.1996) (citing *James v. Brown,* 637 S.W.2d 914, 918 (Tex.1982)).

Fundamentally, the tort of malicious prosecution "is available only to parties who were wrongly sued and seek to be made whole." *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex.App.-Houston [14 Dist.],1997); *Sweezy Constr., Inc. v. Murray*, 915 S.W.2d 527, 531 (Tex.App.-Corpus Christi 1995). In suit alleging malicious prosecution, the defendant benefits from a presumption of good faith in instituting the underlying proceeding, and the plaintiff bears the burden of presenting evidence establishing the defendant lacked probable cause. *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 755-56 (Tex.App.-Houston [14 Dist.] 2000) (citing *Akin v.*

---

filing of the Rescission Deed. (Dkt. No. 80, ¶¶ 99–120.) However, in Lopez' Supplemental Brief Regarding Motion to Dismiss, under the heading "Analysis Surrounding Abuse of Process..." Lopez asserts, for the first time, that the eviction proceeding–and not the Rescission Deed–was the "process" that was lawfully issued and later became inappropriate, giving rise to his abuse of process claim. (Dkt. No. 137 at 25.) Lopez may not belatedly amend his complaint through arguments in response to Barrett Daffin's Motion to Dismiss. *R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 692 (S.D.Tex. 2000). This is especially true here, where Lopez has already amended his Complaint three times during the course of this litigation and was denied leave to file a Fourth Amended Complaint. (Dkt. No. 103.) Lopez failed to raise this argument in his Complaint and the Court will ignore the argument.

*Dahl*, 661 S.W.2d 917, 920 (Tex.1983)). The underlying civil suit has not terminated in favor of the plaintiff, and therefore a malicious prosecution claim cannot be asserted, until the appeals process for the underlying suit has been exhausted. *Texas Beef Cattle Co.*, 921 S.W.2d at 208.

In order to establish a claim for malicious prosecution, the plaintiff must also demonstrate special damages. It is not enough that the plaintiff has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, or attorney's fees. *Id.* (citing *Martin*, 578 S.W.2d at 766–69). Instead, "there must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Texas Beef Cattle Co.*, 921 S.W.2d at 209. As the Texas Supreme Court has explained, "[T]he countervailing policies supporting this heightened threshold in malicious prosecution cases are compelling and well-established in Texas law*." Id.* (citing *Pye v. Cardwell*, 222 S.W. 153, 153 (Tex.1920); *Salado College v. Davis*, 47 Tex. 131, 135–36 (1877)).

As stated above, Lopez alleges that Barrett Daffin is liable for malicious prosecution for its involvement with the Rescission Deed. This claim fails because, in a nutshell, Barrett Daffin has never sued Lopez, either directly or indirectly. Just as the Rescission Deed does not constitute "process" under Texas law, its preparation, execution, and filing do not constitute "legal proceedings." Nor does the Rescission Deed amount to physical interference with Lopez' person or property in the form of an arrest, attachment, injunction, or sequestration, as required under Texas law.  And as noted above, if the Rescission Deed purported to do anything, it was to give the Property back

to Lopez. Finally, Lopez has failed to produce any evidence to support his assertion that

Barrett Daffin acted with malice.

Lopez has failed to establish the required elements to support a claim for

malicious prosecution; thus, Barrett Daffin is entitled to Summary Judgment as a matter

of law.[8]

### 4.   Intentional Infliction of Emotional Distress

Lopez claims that Barrett Daffin intentionally engaged in outrageous conduct that

has subjected him to emotional distress, thus constituting intentional infliction of

emotional distress (IIED).The Texas Supreme Court has held, "Where the gravaman of a

plaintiff's complaint is really another tort, intentional infliction of emotional distress

should not be available." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d (Tex.

2004).    Lopez relies on the same facts to support his claim for abuse of process and

malicious prosecution as he does to support his claim for IIED; thus, his IIED claim is

barred.

But even if Lopez' IIED claim were not precluded, it still fails on the merits.

Under Texas law, to establish the tort of IIED, a plaintiff must show that (1) the

defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and

outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the

---

8. As with his allegation of abuse of process, Lopez attempts to amend his Complaint with respect to the malicious prosecution claim. In his Third Amended Complaint, Lopez' claim for malicious prosecution arises from Barrett Daffin's involvement with the preparation, execution, and filing of the Rescission Deed. (Dkt. No. 80, ¶¶ 99–120.)  But in his Supplemental Brief Regarding Motion to Dismiss, Lopez asserts for the first time that his malicious prosecution claim instead arises from the foreclosure and eviction proceeding, stating "Barrett Daffin and Countrywide were fully aware that they undertook the foreclosure in an improper manner to begin with, and then brought about a wrongful eviction process to remove Mr. Lopez from his home." (Dkt. No. 137 at 22–23.) Again, Lopez has attempted to impermissibly amend his complaint through arguments in his briefs, and the Court will ignore this argument.

emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d

619, 621 (Tex.1993); *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir.1997).

> In his complaint, Lopez claims:
>
> It is wholly outrageous and inappropriate in a civilized society for a large lending institution and a large law firm to engage in civil litigation wherein they retain a second tier of attorneys who maneuver and manipulate title documents in order to gain an advantage in civil litigation. . . .[T]o utilize Ms. Larew in a capacity which she was nor legally able to act in . . . was completely inappropriate, not tolerable in a civilized society, and caused plaintiff both economic and non-economic loss.

(Dkt. No. 80, ¶ 123.) But whether this conduct is so extreme and outrageous in character

as to permit recovery is a question of law for the Court to decide. *See GTE Southwest,*

*Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999). Extreme and outrageous conduct is that

which is "so extreme in degree, and so outrageous in character, as to go beyond all

bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized

community." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Conduct that is

merely insensitive or rude is not extreme and outrageous. *Tex. Farm Bureau Mut. Ins.*

*Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex.2002). Likewise, "mere insults, indignities,

threats, annoyances, petty oppressions, or other trivialities do not rise to the level of

extreme and outrageous conduct." *Id.* In determining whether particular conduct qualifies

as "extreme and outrageous," courts also consider the context and the relationship

between the parties. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 610–11 (Tex.1999).

Lopez has presented no evidence that Barrett Daffin acted recklessly or with the

intent of inflicting emotional distress upon him. Nor has Lopez set forth any conduct by

Barrett Daffin that could reasonably be construed as extreme or outrageous. The Court

finds that any alleged false filing of documents of title or maneuvering or transferring of

14

property by Barrett Daffin did not rise to the level of extreme and outrageous behavior necessary to sustain a claim for IIED. Further, while Lopez has requested compensation for "emotional/non-economic damages for pain, mental anguish, and suffering resulting from the loss of his home," he has not offered any evidence to substantiate that he actually suffered emotional distress, that the distress was severe, or that such severe distress was the result of Barrett Daffin's involvement with the Rescission Deed.

Lopez has failed to establish the required elements to support a claim for IIED; thus, Barrett Daffin is entitled to Summary Judgment as a matter of law.

### D. Conclusion

Accordingly, for the reasons given above, Defendant's Barrett Daffin's Motion for Summary Judgment is GRANTED. Lopez' Motion to Strike Initial Disclosure of Barrett Daffin Filed August 29, 2008 (Dkt. No. 136) is DENIED as moot.

It is so ORDERED.

SIGNED this 20th day of October, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE